18 U.S. 86 (____)
5 Wheat. 86
UNITED STATES
v.
FURLONG, alias HOBSON.
SAME
v.
SAME.
SAME
v.
SAME.
SAME
v.
SAME.
SAME
v.
GRIFFEN and BRAILSFORD.
SAME
v.
BOWERS and MATHEWS.
SAME
v.
SAME.
Supreme Court of United States.

*89 February 21st. These causes were argued by the Attorney-General, for the United States, and by Webster and Winder for the prisoners.[(a)]
March 1st, 1820. JOHNSTON, Justice, delivered the opinion of the court.
A variety of questions have been referred to this court in these cases, and in the decisions to be certified to the circuit court, it will be necessary to notice each question in every case; but in the opinion now to be expressed, the whole may be considered in connection, as they all depend upon the construction of the same laws.
In the two cases of Smith and Klintock, it has been already adjudged, *90 that the 8th section of the act of 1790, was not repealed by the 5th section of that of 1819, and that the decision in Palmer's case does not apply to the *193] case of a crew, whose conduct *is such as to set at nought the idea of thus acting under allegiance to any acknowledged power. From which it follows, that when embarked on a piratical cruise, every individual becomes equally punishable, under the law of 1790, whatever may be his national character, or whatever may have been that of the vessel in which he sailed, or of the vessel attacked.
This decision furnishes an answer to all those questions made in the above cases, which are founded on distinctions in the national character of the prisoner, or in that of the vessels, in relation to the piracies committed by the crew of the Louisa. The moment that ship was taken from her officers, and proceeded on a piratical cruize, the crew lost all claim to national character, and whether citizens or foreigners, became equally punishable, under the act of 1790. It also furnishes an answer to all the exceptions taken in the case of piracy charged against Furlong. For whatever the court might have thought on the effect of the act of 1819, he would have been still punishable under the act of 1790. The indictment against him is general, against the form of the statute in such case made and provided, and it matters not that his offence was committed subsequent to passing the act of 1819, since the other act still remains in force, and reaches his case.
It would seem to be unnecessary to go further in the cases against Furlong, as this conclusion decides his fate; but this court cannot foresee how far it may be necessary to the administration of justice, against accessories or otherwise, that the question in the cases of murder should also be decided.
*194] *The question whether murder, committed at sea, on board a foreign vessel, be punishable by the laws of the United States, if committed by a foreigner upon a foreigner, is one which involves a variety of considerations, and which, in the two cases before us, is presented under an obvious distinction; on the one indictment, it appears as having been committed simply on board the Anne of Scarborough, a foreign vessel, by a foreigner upon a foreigner; on the other, as committed on board the Anne of Scarborough, from an American vessel, by a mariner of the American vessel. It is obvious, that neither case comes within the express words of the decision in Palmer's case. And with regard to the case in which the American vessel is brought in view, there can exist but one difficulty. No difference can be supposed to exist between the case of a murder committed on the seas, by means of a gun discharged from a vessel, and by means of a boat's crew dispatched for that purpose, as was actually the case here. And as to the right of the United States to punish all offences committed on or from on board their own vessels, it cannot be doubted, nor has it been doubted, that the act of 1790 extends to such offences, when committed on the seas. But we have decided, that in becoming a pirate, the Mary of Mobile, from which the prisoner committed this offence, lost her national character. Could she then be denominated an American vessel? We are of opinion, that the question is immaterial; for, whether as an American, or a pirate *195] ship, the offence *committed from her was equally punishable, and the words of the act extend to her in both characters. But if it were necessary to decide the question, we should find no difficulty in maintaining *91 that no man shall, by crime, put off an incident to his situation, which subjects him to punishment. A claim to protection may be forfeited, by the loss of national character, where no rights are acquired, or immunity produced by that cause.
The other case presents a question of more difficulty. It includes the case of a murder committed by one of a crew upon another, on board a foreign vessel, on the high seas. The prisoner is a British subject, the deceased was the same, and the ship also British. This, though not in all its circumstances the same, is in principle precisely that of the United States v. Palmer. The only difference is, that the case of Palmer supposes the prisoner and the deceased to belong to different vessels, and the certificate of the court would seem to cover the case of an American as well as a foreigner, who commits an offence on board a foreign vessel. So far as relates to the point now under consideration, I have no objection to accede to the decision in the case of Palmer. I did not unite in the opinion of the court in that case, on this point, because I thought it was carried too far, in being extended to piracy as well as murder, and to American citizens as well as foreigners. To me it appears, that the only fair deduction from the obvious want of precision in language and in thought, discoverable in the act of 1790, and insisted on in the case of Palmer, is, that in *construing it, [*196 we should test each case by a reference to the punishing powers of the body that enacted it. The reasonable presumption is, that the legislature intended to legislate only on cases within the scope of that power; and general words made use of in that law, ought not, in my opinion, to be restricted so as to exclude any cases within their natural meaning. So far as those powers extended, it is reasonable to conclude, that congress intended to legislate, unless their express language shall preclude that conclusion.
It is true, that the 8th section declares murder as well as robbery to be piracy; but in my view, if anything is to be inferred from this association, it is only that they meant to assert the right of punishing murder, to the same extent that they possessed the right of punishing piracy; which would be carrying the construction beyond what I contend for. The contrary conclusion, viz., that they meant to limit the cases of piracy made punishable under that act, to the cases in which they might, upon principle, punish murder, is rebutted by the generality of the terms used; and it would seem that, with this object in view, they ought to have taken the contrary course, and declared piracy to be murder.
It is obvious, that the penman who drafted the section under consideration, acted from an indistinct view of the divisions of his subject. He has blended all crimes punishable under the admiralty jurisdiction, in the general term of piracy. But there exist well-known distinctions between the crimes of piracy and murder, both as to constituents and *incidents. Robbery [*197 on the seas is considered as an offence within the criminal jurisdiction of all nations. It is against all, and punished by all; and there can be no doubt that the plea of autrefois acquit would be good, in any civilized state, though resting on a prosecution instituted in the courts of any other civilized state. Not so, with the crime of murder. It is an offence too abhorrent to the feelings of man, to have made it necessary that it also should have been brought within this universal jurisdiction. And hence, punishing *92 it, when committed within the jurisdiction, or (what is the same thing) in the vessel of another nation, has not been acknowledged as a right, much less an obligation. It is punishable under the laws of each state, and I am inclined to think, that an acquittal in this case would not have been a good plea, in a court of Great Britain. Testing my construction of this section, therefore, by the rule that I have assumed, I am led to the conclusion, that it does not extend the punishment for murder, to the case of that offence committed by a foreigner upon a foreigner, in a foreign ship. But otherwise as to piracy, for that is a crime within the acknowledged reach of the punishing power of congress. As to our own citizens, I see no reason why they should be exempted from the operation of the laws of the country, even though in foreign service. Their subjection to those laws follows them everywhere; in our own courts, they are secured by the constitution from being twice put in jeopardy of life or member, and if they are also made amenable *198] to the *laws of another state, it is the result of their own act, in subjecting themselves to those laws.
Nor is it any objection to this opinion, that the law declares murder to be piracy. These are things so essentially different in their nature, that not even the omnipotence of legislative power can confound or identify them. Had congress, in this instance, declared piracy to be murder, the absurdity would have been felt and acknowledged; yet, with a view to the exercise of jurisdiction, it would have been more defensible than the reverse, for, in one case, it would restrict the acknowledged scope of its legitimate powers, in the other, extend it. If, by calling murder piracy, it might assert a jurisdiction over that offence, committed by a foreigner in a foreign vessel, what offence might not be brought within their power by the same device? The most offensive interference with the governments of other nations might be defended on the precedent. Upon the whole, I am satisfied, that congress neither intended to punish murder, in cases with which they had no right to interfere, nor leave unpunished the crime of piracy, in any cases in which they might punish it: and this view of the subject appears to me to furnish the only sufficient key to the construction of the 8th section of the act of 1790.
As to piracy, since the decision, that a vessel, by assuming a piratical character, is no longer included in the description of a foreign vessel, no case of difficulty can occur, unless the piracy be committed by the crew of a foreign vessel, upon their own vessel, or by persons issuing immediately *199] from shore. If *such cases occur, under the act of 1790, I shall respectfully solicit a revision of Palmer's case, if it be considered as including those cases. And shall do the same, in the case of murder committed by an American, in a foreign ship, if it ever occur; under the belief, that it never could have been the intention of congress, that such an offender should find this country a secure asylum to him.
There are a few minor points presented in these cases, which it is necessary to notice. It was moved in favor of the prisoners, that the only legal testimony of the character of the ships plundered, must have relation to their register, or rather to the documentary papers which establish their national character. But this we think wholly indefensible. It is obvious, that such testimony might be suppressed, in various ways, by the aggressors. Nor is it at all decisive of the real ownership of a vessel. Our laws recognise the *93 possibility of the register's existing in the name of one, whilst the property is really in another person. The laws that require such documents to be on board a vessel, have relation to financial, commercial or international objects, but are not decisive or necessary in a prosecution for this offence. Property or character is a matter in pais, and so to be established. However, it is unnecessary to examine the question further, as we have decided that the national character of the vessels plundered was, in these cases, wholly immaterial to the crime.
It was also moved, in two of the cases of piracy, that as the offences charged were committed on vessels *then lying at anchor, near the [*200 shore of the islands of Mayo and Bonavista, in a road, and within a marine league of the shore, the prisoners could not be convicted: 1. Because the words, "out of the jurisdiction of any particular state," in the 8th section of the act of 1790, includes foreign as well as domestic states. 2. Because a vessel at anchor in a road, is not a vessel on the high seas, as charged in the indictment.
On the first point, we think it obvious, that out of any particular state, must be construed to mean "out of any one of the United States." By examining the context, it will be seen that particular state is uniformly used in contradistinction to United States. For what reason, it is not easy to imagine; but it is obvious, that the only piracies omitted to be punished by that act, are land piracies, and piracies committed in our waters.
On the second point, we are of opinion, that a vessel in a open road may well be found by a jury to be on the seas. It is historically known, that in prosecuting trade with many places, vessels lie at anchor in open situations (and especially, where the trade winds blow), under the lee of the land. Such vessels are neither in a river, haven, basin or bay, and are nowhere, unless it be on the seas. Being at anchor, is immaterial, for this might happen in a thousand places in the open ocean, as on the banks of Newfoundland. Nor can it be objected, that it was within the jurisdictional limits of a foreign state; *for those limits, though neutral to war, are not neutral [*201 to crimes.
It was also moved, in the same cases, that as there were two counts in the indictment, the one charging the offences as committed on the high seas, the other in a haven, basin or bay, a general verdict of guilty could not be sustained, on account of repugnancy and inconsistency, as both facts could not be true. But on this, it is only necessary to remark, that each count is a distinct substantive charge. Internal repugnancy in any one is a good exception, but non constat as to the whole, taken severally, but each may be for a distinct offence.
There is, finally, another question certified to this court, in one of the cases which arose under the captures made by the Louisa. It is, whether an American citizen, fitting out a vessel, in an American port, really to cruise against a power at peace with the United States, is protected by a commission from a power, belligerent as to the power against which he undertakes to cruise, from offences committed by him against the United States? It will be seen, that the object of this question is to bring the whole crew of the Louisa under the immunities which, it is supposed. Almeida might have claimed, by virtue of his commission. But having decided, that the vessel and crew had forfeited all pretensions to national or belligerent *94 character, this question is anticipated. Yet, lest the ingenious views on this point, presented to the court by one of the gentlemen who argued it, should tempt the unwary into practices that may be fatal to them, we think *202] it *proper to remark that in Klintock's case, it has been decided, that a belligerant character may be put off, and a piratical one assumed, even under the most unquestionable commission. And if the laws of the United States declare those acts piracy, in a citizen, when committed on a citizen, which would be only belligerent acts, when committed on others, there can be no reason why such laws should not be enforced. For this purpose, the 9th section of the act of 1790 appears to have been passed. And it would be difficult to induce this court to render null the provisions of that clause, by deciding either that one who takes a commission under a foreign power, can no longer be deemed a citizen, or that all acts committed under such a commission, must be adjudged belligerent, and not piratical acts.

UNITED STATES v. JOHN FURLONG alias JOHN HOBSON.
CERTIFICATE.  This cause came on to be heard, on the transcript of the record of the circuit court of the United States for the district of Georgia, and on the question on which the judges of that court were divided in opinion, and was argued by counsel: on consideration whereof, this court is of opinion, that the 8th section of the act of the 30th of April 1790, on which the indictment is founded, is not repealed by the act of the 3d of March 1819, entitled, "an act to protect the commerce of the United States, and to punish the crime of piracy."

*203] *UNITED STATES v. JOHN FURLONG alias JOHN HOBSON.
CERTIFICATE.  This cause came on to be heard, on the transcript of the record of the circuit court of the United States for the district of Georgia, and on the questions on which the judges of that court were divided in opinion, and was argued by counsel: on consideration whereof, this court is of opinion, as to the first and second questions stated by said circuit court, that it was not necessary the indictment should charge the prisoner as a citizen of the United States, nor the crime as committed on board an American vessel, inasmuch as it charges it to have been committed from on board an American vessel, by a mariner sailing on board an American vessel. And as to the third question, that the act of the 30th of April 1790, is not virtually repealed by the act of the 3d of March 1819, entitled, "an act to protect the commerce of the United States, and punish the crime of piracy."

UNITED STATES v. GRIFFEN AND BRAILSFORD.
CERTIFICATE.  This cause came on to be heard, on the transcript of the record of the circuit court of the United States for the district of South Carolina, and on the questions on which the judges of that court were divided in opinion, and was argued by counsel: on consideration *204] whereof, this court *is of opinion:
1. That an American citizen fitting out a vessel in an American port, really to cruise against a power at peace with the United States, is not protected, *95 by a commission from a belligerent, from punishment for any offence committed by him against vessels of the United States.
2. It is competent for a jury to find that a vessel, within a marine league of the shore, at anchor in an open road-stead, where vessels only ride, under the shelter of the land, at a season when the course of the winds is invariable, is upon the high seas.
3. That the words, out of the jurisdiction of any particular state, in the 8th section of the act of congress of the 30th of April 1790, entitled, "an act for the punishment of certain crimes against the United States," must be construded to mean, out of the jurisdiction of any particular state of the United States.
4. That the 8th section of the act of the 30th of April 1790, entitled, "an act for the punishment of certain crimes against the United States," is not repealed by the 8th section of the act of the 3d of March 1819, entitled, "an act to protect the commerce of the United States, and to punish the crime of piracy."
5. That the 5th section of the act of the 3d of March 1819, furnishes a sufficient definition of piracy, and that it is defined "robbery on the seas."
6. That considering this question, with reference to the case stated, the 8th section of the act of 1790 comprises the case of piracy committed by a foreigner, in a foreign vessel, upon any vessel, so as to *make him [*205 punishable with death, inasmuch as both vessel and crew no longer retained any pretension to national character, after assuming that of a pirate.
7. That the national character of a vessel is a fact which a jury may find, upon such evidence as will satisfy their minds, without production of the register, or proof of its having been on board of her.
8. That the 8th question is answered in the answer given to the fourth question.

UNITED STATES v. DAVID BOWERS and HENRY MATHEWS.
CERTIFICATE.  This cause came on to be heard, on the transcript of the record of the circuit court of the United States for the district of Georgia, and on the questions on which the judges of that court were divided in opinion, and was argued by counsel: on consideration whereof, this court is of opinion, 1. That the act of the 30th of April 1790, entitled, &c., section 8th, does extend to piracy committed by the crew of a foreign vessel on a vessel exclusively owned by persons not citizens of the United States, in the case of these prisoners, in which it appears, that the crew assumed the character of pirates, whereby they lost all claim to national character or protection. 2. That the 8th section of the act of the 30th of April 1790, entitled, &c., has not been repealed by the 8th section of the act of March 3d, 1819, entitled, &c.

*UNITED STATES v. DAVID BOWERS and HENRY MATHEWS. [*206
CERTIFICATE.  This cause came on to be heard, on the transcript of the record of the circuit court of the United States for the district of Georgia, and on the questions on which the judges of that court were divided in opinion, *96 and was argued by counsel: on consideration whereof, this court is of opinion:
1. That it is competent to prove the national character of an American vessel, without evidence of her register.
2. That it is competent for the jury to find that the piracy was committed on the high seas, upon evidence that the Asia, at the time she was boarded, was at anchor in an open road-stead, at the island of Bonavista.
3. That the 8th section of the act of the 30th of April 1790, entitled, &c., is not repealed by the 8th section of the act of March 3d, 1819, entitled, &c.
That each count in an indictment is a substantive charge, and if the finding conform to any one of them which in itself will support the verdict, it is sufficient to give judgment.
NOTES
[(a)] The substance of their arguments will be found in the preceding cases of United States v. Klintock, ante, p. 144, and United States v. Smith, ante, p. 153.