# UNITED STATES *v.* HARRIS.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 169. Argued March 5, 6, 1900.—Decided April 9, 1900.

A receiver of a railroad is not within the letter or the spirit of the provisions of the act of March 3, 1873, c. 252, 17 Stat. 584, entitled " An act to prevent cruelty to animals while in transit by railroad or other means of transportation within the United States," now incorporated into the Revised Statutes as sections 4386, 4387, 4388 and 4389.

THIS was a suit brought in November, 1895, in the District Court of the United States for the Eastern District of Pennsylvania, by the United States against Joseph S. Harris, Edward M. Paxson and John Lowber Welsh, receivers of the Philadelphia and Reading Railroad Company, to recover a penalty in the sum of five hundred dollars for an alleged violation of sections 4386, 4387, 4388 and 4389 of the Revised Statutes of the United States.

There was a verdict in favor of the United States, but afterwards, on a question reserved at the trial, judgment was entered in favor of the defendants *non obstante veredicto.* 78 Fed. Rep. 290. Thereupon a writ of error was sued out from the Circuit Court of Appeals for the Third Circuit, and on March 14, 1898, the judgment of the District Court was affirmed. 57 U. S. App. 259. The cause was then brought to this court on a writ of *certiorari.*

*Mr. Solicitor General* for the United States.

*Mr. John G. Lamb* for Harris.

MR. JUSTICE SHIRAS delivered the opinion of the court.

This was an action to recover penalties for an alleged violation of the laws of the United States relating to the transportation of live stock; and the question involved is whether the defendants, who were in charge and control of the Philadelphia and Reading Railroad as receivers, appointed by the Circuit Court of the United States, were liable in such an action.

The act under which this suit was brought was passed March 3, 1873, and was entitled "An act to prevent cruelty to amimals while in transit by railroad or other means of transportation within the United States." It appears in the Revised Statutes as sections 4386, 4387, 4388 and 4389, as follows:

"SEC. 4386. No railroad company within the United States whose road forms any part of a line of road over which cattle, sheep, swine or other animals are conveyed from one State to another, or the owners or masters of steam, sailing or other vessels carrying or transporting cattle, sheep, swine or other animals from one State to another, shall confine the same in cars, boats or vessels of any description for a longer period than twenty-eight consecutive hours, without unloading the same for rest, water and feeding for a period of at least five consecutive hours, unless prevented from so unloading by storm or other accidental causes. In estimating such confinement the time during which the animals have been confined without such rest on connecting roads from which they are received shall be included, it being the intent of this section to prohibit their continuous confinement beyond the period of twenty-eight hours, except upon contingencies hereinbefore stated.

"SEC. 4387. Animals so unloaded shall be properly fed and watered during such rest by the owner or person having the custody thereof, or in case of his default in so doing, then by the railroad company or owners or masters of boats or vessels transporting the same at the expense of the owner or person in custody thereof; and such company, owners or masters shall in such case have a lien upon such animals for food, care and

custody furnished, and shall not be liable for any detention of such animals.

"SEC. 4388. Any company, owner or custodian of such animals who knowingly and willingly fails to comply with the provisions of the two preceding sections, shall, for every such failure, be liable for and forfeit and pay a penalty of not less than one hundred nor more than five hundred dollars. But when animals are carried in cars, boats or other vessels in which they can and do have proper food, water, space and opportunity to rest, the provisions in regard to their being unloaded shall not apply.

"SEC. 4389. The penalty created by the preceding sections shall be recovered by civil action in the name of the United States, in the Circuit or District Court of the United States, holden within the district where the violation may have been committed, or the person or corporation resides or carries on its business; and it shall be the duty of all United States marshals, their deputies and subordinates, to prosecute all violations which come to their notice or knowledge."

The contention on behalf of the Government is that, by the words "any company," used in section 4388, Congress intended to embrace all common carriers, whether by rail or water, upon whom the duty was imposed by section 4346 of unloading and feeding the animals; that the word "company" is used in a popular sense as signifying the person or persons, the association or corporation, carrying on the business of a common-carrier by rail or water; that, as shown by its title, the act in question was a humane one, designed to prevent cruelty to animals while in course of interstate transit; that the regulations were to be complied with whenever animals were transported by rail or boat from one State or another; and that whoever had charge of the railroad or the boat had to see that these wholesome and humane regulations were obeyed or had to pay the penalty for violating them.

To strengthen the argument that Congress intended to include even receivers when managing a railroad under an appointment by a court, the Government's counsel calls attention

to the provisions of the second and third sections of the act of August 13, 1888, c. 866, 25 Stat. 433, 436, reading as follows:

"SEC. 2. That whenever in any cause pending in any court of the United States there shall be a receiver or manager in possession of any property such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the State in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof. Any receiver or manager who shall wilfully violate the provisions of this section shall be deemed guilty of a misdemeanor, and shall, on conviction thereof, be punished by a fine not exceeding three thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court.

"SEC. 3. That every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice."

It is claimed that the effect of such legislation is to place receivers upon the same plane with railway companies as respects their liability to be sued for acts done while operating a railroad.

Upon the whole, the proposition of the Government's counsel is that the words "any company, owner or custodian of such animals," used in section 4388, are intended to cover all those who can possibly violate the preceding two sections; that the words "every company" must, therefore, be held to include a railroad company, whether a person, a partnership or a corporation, and whether acting individually, or through officers or receivers.

It may be conceded that it was the intention of Congress to subject receivers of railroad companies, appointed such by courts of the United States, to the valid laws and regulations of the States and of the United States, whose object is to promote the safety, comfort and convenience of the travelling public. But

we are not now concerned with the general intention of Congress, but with its special intention, manifested in the enactments under which this suit was brought. Was it the purpose of Congress when prescribing a penalty for any company, owner or custodian of animals who knowingly and willingly fails to comply with the directions of the statute, to include receivers? Can we fairly bring receivers within the penal clause by reasoning from a supposed or an apparent motive in Congress in passing the act?

It was the view of the courts below that receivers were plainly not within the letter of the statute, and not necessarily within its purpose or spirit ; and an attentive examination has brought us to the same conclusion.

It must be admitted that, in order to hold the receivers, they must be regarded as included in the word " company." Only by a strained and artificial construction, based chiefly upon a consideration of the mischief which the legislature sought to remedy, can receivers be brought within the terms of the law. But can such a kind of construction be resorted to in enforcing a penal statute? Giving all proper force to the contention of the counsel of the Government, that there has been some relaxation on the part of the courts in applying the rule of strict construction to such statutes, it still remains that the intention of a penal statute must be found in the language actually used, interpreted according to its fair and obvious meaning. It is not permitted to courts, in this class of cases, to attribute inadvertence or oversight to the legislature when enumerating the classes of persons who are subjected to a penal enactment, nor to depart from the settled meaning of words or phrases in order to bring persons not named or distinctly described within the supposed purpose of the statute.

It may well be that Congress, in omitting to expressly include receivers in these sections, intended to leave them subject to the control and direction of the courts, whose officers they are. It does not, therefore, follow that the statute in question would be without operation where railroads are in the hands of receivers. The owners and custodians of the stock would still remain subject to the punishment prescribed.

We cannot better close this discussion than by quoting the language of Chief Justice Marshall, in the case of *United States* v. *Wiltberger*, 5 Wheat. 76 :

" The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the legislative and not in the judicial department. It is the legislature, not the court, which is to define a crime and ordain its punishment. It is said that, notwithstanding this rule, the intention of the lawmaker must govern in the construction of penal as well as other statutes. But this is not a new independent rule which subverts the old. It is a modification of the ancient maxim and amounts to this, that though penal statutes are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the legislature. The maxim is not to be applied so as to narrow the words of the statute to the exclusion of cases which those words, in their ordinary acceptation, or in that sense in which the legislature obviously used them, would comprehend. The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words there is no room for construction. The case must be a strong one indeed which would justify a court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute its language must authorize us to say so. It would be dangerous, indeed, to carry the principle that a case which is within the reason or mischief of a statute is within its provisions, so far as to punish a crime not enumerated in the statute because it is of equal atrocity, or of a kindred character with those which are enumerated. If this principle has ever been recognized in expounding criminal law, it has been in cases of considerable irritation, which it would be unsafe to consider as precedents forming a general rule in other cases." See likewise *Sarlls* v. *United States*, 152 U. S. 570.

The judgment of the Circuit Court of Appeals is

*Affirmed.*