## THE UNITED STATES OF AMERICA *vs.* HALEAKALA RANCH COMPANY, a corporation.

### October 26, 1908.

*Construction of statute*: The words, "any . . . corporation organized by authority of any laws of Congress," in the act of Congress of January 26, 1907 (34 Stat. L., part 1, p. 864). do not include a corporation chartered by the government of the Hawaiian monarchy, although the act of Congress creating a territorial government for the Hawaiian Islands provided that the pre-existing Hawaiian statute. under which such corporation was chartered, should "continue in force" subject to repeal or amendment.

*Same*: Such words include a corporation chartered by the territorial government inasmuch as the authority for its incorporation comes primarily from an act of Congress creating such government.

*Same*: Such words include all corporations chartered after the assumption of sovereignty of the Hawaiian Islands by the United States under the provisions of the joint resolution of annexation, with the exception of joint stock companies.

*Same:* An election in a Territory for a delegate to Congress is not an election within the definition of the latter part of the act of Congress of January 26. 1907.

*Constitutionality of statute*: Federal laws, making regulations for the conduct of elections in which federal officers and legislators are voted for and providing punishments for their violation, are not unconstitutional because of the circumstance that state officers and legislators are voted for at the same election.

*Same*: A federal law providing for the punishment of "any corporation" which may make a money contribution in connection with an election of federal officers and legislators, is not unconstitutional because the words "any corporation," include state corporations.

*Information*: Under act of Congress of January 26, 1907: 34 Stat. L., part 1, chap. 420, p. 864.

*Robert W. Breckons,* U. S. District Attorney, for the Government.

*Smith & Lewis,* Attorneys for Defendant.

DOLE, J.   The defendant, a corporation organized under and by virtue of the laws of the Kingdom of Hawaii on Sep-

tember 1, 1888, is charged in the first count of the information with making a "money contribution in connection with an election to a political office, to-wit, to an election for the office of Delegate from the Territory of Hawaii to the Sixty-first Congress of the United States of America, contrary to the form of the statute of the United States in such case made and provided, to-wit, an act of the Congress of the United States of America, approved January 26, A. D. 1907 (34 Stat. L., part 1, p. 864)." The statute forbids "any national bank or any corporation organized by authority of any laws of Congress" from making a "money contribution in connection with any election to any political office."

It is contended by the United States that upon annexation all corporations owing their existence to either the Hawaiian Kingdom or the Republic of Hawaii "no longer had any standing save as the same might have been preserved by that provision of the resolution of annexation which reads as follows: ' The municipal legislation of the Hawaiian Islands, not enacted for the fulfilment of the treaties so extinguished, and not inconsistent with this joint resolution nor contrary to the Constitution of the United States nor to any existing treaty of the United States, shall remain in force until the Congress of the United States shall otherwise determine'." And it further contends that the defendant "was in fact continued in existence or, if the term may be used, recreated, by virtue of the resolution of annexation."

The laws of the Republic of Hawaii were more definitely dealt with by the organic act creating the government of the Territory of Hawaii (act of April 30, 1900: 31 Stat. L. 142). This provides in section 6 "that the laws of Hawaii not inconsistent with the Constitution or the laws of the United States or the provisions of this act, shall continue in force subject to repeal or amendment by the legislature of Hawaii or the Congress of the United States," and then proceeds specifically to repeal a number of the Hawaiian laws but does not repeal the Hawaiian law relating to corporations.

The Hawaiian Islands became a part of the United States, not by conquest or by any use of force by the greater power, but as a result of negotiations between the two countries, the initiation of such negotiations having come from the Republic of Hawaii. In the light of these facts, the expression of the resolution of annexation (July 7, 1898: 30 Stat. L. 750) that the municipal legislation of the Hawaiian Islands should "remain in force" until the Congress of the United States should otherwise determine, and that of the organic act, that the laws of Hawaii not inconsistent with the Constitution or laws of the United States or the provisions of the organic act should "continue in force," subject to repeal or amendment by the legislature of Hawaii or the Congress of the United States, was significant of the complete recognition by the United States of the validity of such laws under the new status and of the agreement for their continuance until subject to further legislation relating to them either by Congress or by the Hawaiian legislature.

Annexation was a transfer of sovereignty by friendly compact and for due consideration. Vested rights not involved in the transfer cannot be affected by such a transaction, nor can it be construed so as to impair the obligation of contracts,—the contracts related to this case being the charter of the defendant granted by the government of the Hawaiian Kingdom and continued in force by the proclamation of 1893 creating the Provisional Government of the Hawaiian Islands, and by the Constitution of the Republic of Hawaii, which charter represents the contract between government and the incorporators, and the contract between the stockholders.

The extinction of corporations, as suggested by counsel for the prosecution, raises the difficult question of the revival of such extinguished corporations,—assuming them to have been so extinguished. The revival of a corporation which has been dissolved is as fully an exercise of power as the original incorporation. If, therefore, the then existing Hawaiian corporations lost their corporate powers by reason of the annexation

proceedings, it does not appear that there have been any authoritative proceedings since that time to revive them. The rule of contemporaneous construction, then, would apply against the theory of extinction.

The situation may be compared with the sale of real estate subjecting the granted property to leasehold covenants or covenants for easements of right of way, water or drainage, in favor of third parties. In such a case the transfer of ownership does not destroy such covenants, even momentarily. The analogy is still stronger in the case of a devise of real estate subject to such covenants, in that the devise comes into operation at the moment the proprietor ceases to exist; the fact of the death of the devisor causes no extinction of the covenants. I am convinced that there was no break in the authority of the Hawaiian corporation laws and no cessation of the status of the corporations which had been created by virtue of them; and the suggestion of counsel for the prosecution, that all corporations which had been organized under the laws of either the Kingdom or the Republic, "lost their corporate powers by reason of the creator having ceased to exist, and regained such powers only by virtue of the resolution of annexation or the organic act," is to my mind inconsistent with the facts. If I am right in this view, it cannot be said that this defendant was organized by authority of a law of Congress.

Counsel on both sides asked the court that if "it believes there is a distinction between cases of corporations organized before and those organized since the date of the organic act," it would express such belief in its opinion.

It is certain that the above considerations do not apply to corporations organized under the territorial government, and that a different relation to the authority of Congress exists in relation to such corporations,—the question in such a case being merely, is a corporation that is chartered by the territorial government "organized by authority of any laws of Congress?"

The cases of *Adams Express Co. v. Denver & Rio Grande R. Co.,* 16 Fed. Rep. 712, and the *Pacific Railroad Removal*

*Cases,* 115 U. S. 2, are cited to support the negative of this question; but although the first of these cases decided that Wells Fargo & Company, a corporation organized under an act of the Colorado legislature,—Colorado being then a Territory, was not a federal corporation, yet the gist of the decisions in these cases was that, under the act of Congress of March 3, 1875 (18 Stat. L., chap. 137, p. 470), providing among other things for "the removal of causes from State courts," "corporations of the United States created by and organized under acts of Congress * * * are entitled as such to remove into the circuit courts of the United States suits brought against them in the State courts under and by virtue of the act of March 3, 1875, on the ground that such suits are suits 'arising under the laws of the United States'." Even though the implication of these decisions is that corporations organized under territorial laws are not federal corporations and so not entitled to the benefit of the removal statute, it does not follow that corporations chartered under the provisions of territorial laws and not to be called "federal corporations," are not "organized by authority of any laws of Congress."

Congress has incorporated companies by direct acts, as in the case of the Union Pacific Railroad Company (12 Stat. L., chap. CXX, p. 489) and other corporations. It has also authorized Territories by general act to provide for the incorporation of companies for certain specified objects. The legislature here was authorized to enact such a law, but there being one already in operation, which was continued in force by the organic act, there was no necessity for new legislation on the subject. Such corporations may be said to be created by authority of a law of Congress, inasmuch as the authority for their incorporation comes primarily from a law of Congress. Does the rule that penal laws should be strictly construed interfere with such a conclusion? There is no question in this part of the case of construction of words, but here is a sentence open to two constructions and in reaching the conclusion the object of the law has to be considered. It seems to me that a conclusion

that the expression of the statute, "corporations organized by authority of any laws of Congress" includes corporations created under a territorial law. The reason of such a conclusion is so much stronger than any basis for a contrary one, that it may be regarded as imperative, and, if so, the rule of strict construction has little weight, or rather it may be said that the rule requires this conclusion rather than a contrary one.

This, however, has not disposed of the question as to the status of corporations which had been chartered between the going into effect of the joint resolution of annexation and the inception of the Territory of Hawaii.

Counsel for the defendant cites in support of his contention that such corporations were not within the act of January 26, 1907, the case of *Hawaii v. Mankichi,* 190 U. S. 197,—generally known as the Mankichi Case; also the cases of *Peacock & Co. v. Republic of Hawaii,* 12 Haw. 27, *Republic of Hawaii v. Edwards,* Id. 55, and *Ex parte Ah Oi,* 13 Id. 534, and argues that under the joint resolution of annexation the provision that "the municipal legislation of the Hawaiian Islands not enacted for the fulfilment of the treaties so extinguished and not inconsistent with this joint resolution nor contrary to the Constitution of the United States nor to any existing treaty of the United States, shall remain in force until the Congress of the United States shall otherwise determine," was unnecessary, as the continuance of such municipal legislation would have been a matter of course without any enactment on that point, and that therefore the Hawaiian statute providing for corporations, remaining in force, did not owe its authority to Congress; and he also makes a distinction between the expression of the joint resolution and that of the organic act in which the former uses the words "remain in force" and the latter the words "continue in force."

I am unable to recognize the distinction contended for between these expressions. *Remain* is an intransitive verb and *continue* is both transitive and intransitive, and in its latter use it is a synonym of *remain.*

Besides the reference in the joint resolution of annexation providing that the municipal legislation referred to "shall remain in force," I find the following provision: "until Congress shall provide for the government of such islands, all the civil, judicial and military powers exercised by the officers of the existing government in said islands shall be vested in such person or persons and shall be exercised in such manner as the President of the United States shall direct; and the President shall have the power to remove said officers and fill the vacancies so occasioned." On August 12, 1898, at Honolulu the joint resolution was confirmed by the President of the Republic of Hawaii, and the sovereignty of the Hawaiian Islands surrendered to the United States. Whereupon, the United States, by its representative, announced that in the exercise of the powers conferred on him by the joint resolution, the President directs that the "civil, judicial and military powers in question shall be exercised by the officers of the Republic of Hawaii as it existed just prior to the transfer of sovereignty, subject to his power to remove such officers and to fill vacancies," and that such officers should at once take an oath of allegiance to the United States.

In view of these provisions and public and official acts and announcements, can the defendant maintain his contention? The surrender of sovereignty was complete, and the government of the Hawaiian Islands was placed by Congress, for the time being, in the hands of the President of the United States. Not only did he have the power to appoint and remove the civil, judicial and military officers, but also to direct the manner in which they should exercise their official powers. Among these powers was the power to incorporate companies for certain distinct purposes and to issue charters to them. This power, after the surrender of Hawaiian sovereignty to the United States, was in an official appointed by the President of the United States, and the manner of the exercise of this power was in the control of the President of the United States, who received his powers in the matter through an act of Congress, i. e., the

20—D

joint resolution. Does it not therefore follow that all Hawaiian corporations chartered between the confirmation of the joint resolution and the inception of the Territory were organized by authority of a law of Congress? I think it does, and that therefore such corporations are within the law forbidding corporations so organized from contributing money "in connection with any election to any political office."

It does not appear that joint stock companies, which are incorporated independently of official consent, and do not require charters emanating from any authority for their existence are within the act, and forbidden to make the money contributions referred to.

The second count of the information alleges that the defendant made "a money contribution in connection with an election at which a representative in Congress is to be voted for, to-wit, in connection with an election within the Territory of Hawaii for a delegate to represent the said Territory of Hawaii in the Sixty-first Congress of the United States of America."

The contention of the defendant in support of the demurrer as to this count is that inasmuch as the law describes the offense as a money contribution by a corporation at an election in which a *representative* in Congress is to be voted for, there is no violation of the law in a contribution in connection with an election at which a *delegate* in Congress is to be voted for, the law being silent in regard to such latter election.

The prosecution urges that the Constitution in its provisions in regard to Congress makes no use of the word *delegate* in dealing with elections for members of Congress but uses only the words senators and representatives (Art. 1, sec. 4), and says in its brief, on page 13, "surely it was contemplated that perhaps such an act as that of March 3, 1817 (3 Stat. L., chap. XLII, p. 363), and subsequent acts relative to delegates, might come before Congress" in that "at the time of its adoption Congress of course had in mind that at some time in the future it would become necessary in some manner or other to govern the Territories."

As a matter of fact, the first ordinance providing for the government of the Northwest Territory was enacted July 13, 1787 (R. S. U. S., p. 15, 1 Stat. L., 50), two months before the enactment of the Constitution, and such ordinance provided for the election of a delegate to Congress. So it may be taken for granted that when the Constitution was enacted the members of the Constitutional Convention were fully apprised of such feature of territorial government. Thereafter, from time to time, amendments were made to the act of 1787 by which the manner of election of delegates was changed from election by the upper and lower houses of the legislatures of the territories to an election by the same voters as were electors of representatives. The fact that the Constitutional Convention made provision in the Constitution for senators and representatives as members of Congress (Art. 1, secs. 2 and 3), is evidence that these were deemed to be constitutional matters and not matters of general legislation; and the further fact that the Constitution gave to Congress the power to "make all needful rules and regulations respecting the territory or other property belonging to the United States" (Art. 4, sec. 3), is evidence of their view that the matter of dealing with the territories, providing for their government and representation in Congress by delegates, were subjects belonging to the legislative department of the government, such legislation having already been initiated by the act of 1787, already referred to. And this arrangement fully accounts for the fact that in the Constitution there is no reference to delegates where reference is made to senators and representatives.

The case of *Doty v. Strong*, 1 Pinn. (Wis.) 84, 88, is cited in the plaintiff's brief as authority for the contention that the words of the act "Representatives in Congress" include delegates in their meaning. The court in this case referred most briefly to this point and decided that the provisions of the sixth section of the first article of the Constitution, giving to senators and representatives in Congress the privilege from arrest during their attendance at the sessions and in going to or re-

turning from the same, applies to a delegate on the ground that he is a member of the House of Representatives and entitled to the same constitutional privileges as senators and representatives. Certainly by analogy he should have such privileges; whether he is entitled to them by virtue of the Constitution I have much doubt.

The provisions of chapter 8 of the Revised Statutes on contested elections, cited by counsel for the prosecution as an instance in which the word *representative* was used by Congress as including *delegates,* has little significance in relation to this point. The first section of this chapter (section 105) begins with the words "Whenever any person intends to contest the election of any member of the House of Representatives," etc. This raises the question as to what constitutes a member of such House. If a delegate is a member, then this phrase quoted has no significance on the question as to whether the word *representative* includes *delegate,* because if a delegate is a member of the House of Representatives then he is fully included by the words "any member of the House of Representatives." In the case of *Doty v. Strong,* supra, the court decides that a delegate is a member of the House of Representatives.

There is some conflict in the statute in referring to the status of delegates as to such membership, but I deem such conflict to have little significance but to be attributed more to thoughtlessness in drafting bills than to any consideration of their status. On general principles, in spite of the common use in the statutes of the words "members and delegates," I think it stands to reason that a delegate is a member of the House of Representatives, although not a full member. He is elected to such position by the same electors as elect the representatives, he is allowed the same salary as the representatives and the same mileage, he has a seat in the House with the right to join in the discussion of matters before the House, acts on the committees, and, so far as I am aware, has all the powers of representatives with the one exception that he is without a vote. There is no doubt in my mind but that he is a member of the House

of Representatives but without full powers, and to an extent he is recognized as such in Congressional legislation. With this conclusion, the reference to the chapter on contested elections has no force. The fact that in the contest referred to of the election of Delegate Kalanianaole in this district, the House took jurisdiction and decided the questions raised without objection or raising the question of the validity of the proceedings on account of the fact that it was a delegate whose election was contested, shows conclusively that that body considered that a delegate was a member of the House of Representatives under the section referred to.

Generally in the federal statutes where delegates are meant to be included the word is used. We have in the following sections of the Revised Statutes references to "Representatives and Delegates" in different laws referring to matters of election: 2010, 2011, 2016, 2017, 2018, 2020, 2021, 2027, 5511, 5512, 5513, 5514, 5515; also the following: 35, 38, 39, 45, 47; also 18 Stat. L. 389 and 32 Stat. L. 854-861; also section 1782 referring to taking compensation in matters to which the United States is a party, "No Senator or Representative or Delegate after his election and during his continuance in office," etc. This act as originally enacted used the following words: " No member of the Senate or House of Representatives shall, after his election and during his continuance in office," etc. The words "or Delegate" were added in the first line of this section in accordance with a bill introduced in the House January 15, 1872, so as to include Congressional delegates from the Territories and the District of Columbia. H. R. 1028; 1 Gould & Tucker's Notes on the Revised Statutes, p. 455. It is significant that in all of these references to the members of the lower house there appears no case, so far as my information goes, where the word "representative" is impliedly used for the word "delegate." This fact tends strongly to sustain the theory that Congress has as a rule never confused the two words "representative" and "delegate" or used the word "representative" as including in its meaning the word "delegate."

The rule of strict construction of criminal statutes is doubtless based on the other rule that everyone is presumed to know the law. It is not the policy of the courts nor is it consistent with justice that persons should be punished for infractions of such provisions of criminal statutes as are uncertain in their meaning, especially where the application of the law to the conduct of the person charged with its infraction, requires the law to be construed to meet the case.

" Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid. Before a man can be punished, his case must be plainly and unmistakably within the statute." *United States v. Brewer,* 139 U. S. 278, 288.

" The certainty of the law is next in importance to its justice. And if the legislature has expressed its intention in the law itself, with certainty, it is not admissible to depart from that intention on any extraneous consideration or theory of construction." 2 *Lewis' Sutherland on Statutory Construction,* 698, sec. 365.

This is not the case of a law that needs construction in order to give it life. It is merely a question of extending its application beyond the ordinary meaning of its language. The word "Representative," in the statute under which this case is brought, is obviously used in its technical sense, that being the use of the associated words "Presidential and Vice-Presidential" and "Senator." " The context may be referred to in ascertaining the sense in which it was used." *Southern Bell Telephone & Telegraph Co. v. D'Alemberte,* 39 Fla. 25 : 21 So. 570; 2 *Lewis' Sutherland on Statutory Construction,* 753, sec. 394. " Such words, however, will be understood in a technical sense when the act treats of a subject in relation to which such words are technically employed." Id., sec. 395; *Merchants' Bank v. Cook,* 4 Pick. (Mass.) 405. It does not appear that there is any instance in which the word "Representative" is used in the United States statutes in matters referring to Congress or Congressional elections in an untechnical sense.

" It is not permitted to courts, in this class of cases, to attribute inadvertence or oversight to the legislature when enumerating the classes of persons who are subjected to a penal enactment, nor to depart from the settled meaning of words or phrases in order to bring persons not named or distinctly described within the supposed purpose of the statute." *United States v. Harris,* 177 U. S. 305, 309.

" It is not enough to authorize a conviction under it (the act) that the case comes within the mischief or reason of a law. It must come within its provisions and be one of the enumerated cases for which it inflicts a punishment." *United States v. Wilson,* 28 Fed. Cas. (No. 16,730), 699, 709.

" The mischief at which a statute was leveled, and the fact that other acts which it does not denounce are within the mischief, and of equal atrocity with those which it forbids, do not raise the presumption that the legislative body which enacted it had the intention, which the law does not express, to prohibit the performance of the acts which it does not forbid. Nor will they warrant a construction which imports into the statute such a prohibition. The intention of the legislature and the meaning of a penal statute must be found in the language actually used, interpreted according to its fair and usual meaning, and not in the evils which it was intended to remedy, nor in the assumed secret intention of the lawmakers to accomplish that which they did not express." *Johnson v. Southern Pacific Co.,* 117 Fed. Rep. 462, 467.

"A penal statute cannot be extended by implication or construction. It cannot be made to embrace cases not within the letter, though within the reason and policy, of the law. Although a case may be within the mischief intended to be remedied by a penal act, that fact affords no sufficient reason for construing it so as to extend it to cases not within the correct and ordinary meaning of the language. * * * To constitute the offense the act must be both within the letter and spirit of the statute defining it. Penal statutes can never be extended by mere implication to either persons or things not expressly brought within their terms." *Sutherland on Statutory Construction,* 439, 440, sec. 350.

"A penal statute should be construed to carry out the obvious intention of the legislature, and be confined to that. Every case must come not only within its letter but within its spirit and purpose; but it should be given a rational construction." *Id.* 445, sec. 354.

Late in the discussion of this case on briefs, counsel for the defendant, with the consent of the court and counsel for the prosecution, submitted a brief against the constitutionality of the act under which this case was brought. He cites the decision in the *Employers' Liability Cases,* 207 U. S. 463, as authority for his contention, and argues that the act in question is unconstitutional because it deals with elections in which state officers are voted for, and says, " the act prohibits any contribution in connection with state officers because elected at the same election with congressmen," and again, "the force and effect of this statute is to prohibit contributions to election of state officers."

The Employers' Liability Act attempts a new departure in regard to the "fellow servant" rule of liability of employers, by removing the benefit of this rule from employers who are common carriers "engaged in trade or commerce in the District of Columbia, or in any Territory of the United States, or between the several States, or between any Territory and another, or between any Territory or Territories and any State or States, or the District of Columbia, or with foreign nations, or between the District of Columbia and any State or States and foreign nations." 34 Stat. L., part 1, p. 232. The court decided that it was within the power of Congress to apply the fellow servant rule wherever injury occurred in interstate business but found that where the law went beyond this and made employers liable in matters outside of federal jurisdiction, that is, where the employes were injured while engaged in intrastate work, the law was unconstitutional.

The law of the present case is based upon the constitutional provision giving Congress authority "to make all laws which shall be necessary and proper for carrying into execution" the legislative powers vested by the Constitution in Congress (Art. 1, sec. 8, par. 18). One of these is the power to make regulations as to the manner of holding elections (Art. 1, sec. 4).

Is there any analogy between the Employers' Liability Act and the statute under consideration, and has that act estab-

lished a precedent by which this statute must be regarded as unconstitutional?

At first sight the Employers' Liability Act appears similar in the principles to be applied in its execution to the act under consideration, but upon examination, these apparent similarities disappear; the one being an attempt to deal with matters relating to the rights of individuals which include incidents beyond the jurisdiction of the United States, while the other is an act based on clear constitutional authority and aimed to protect the purity of federal elections, and operative only in such elections; the mere fact that state officials and legislators are voted for at the same elections by state enactment for state convenience, not being deemed by the Supreme Court to be any ground for defeating the object of the law.

The cases of *Ex parte Siebold* (100 U. S. 371), and *Ex parte Yarbrough* (110 Id. 651), supported by numerous other federal cases, have defined the law in relation to elections where federal and state officers and legislators are voted for, which, unless overruled by the *Employers' Liability Cases,* establish the rule that Congress has the power to enact laws for the protection of elections in which federal officers and legislators are voted for, from violence, corruption and fraud, even though state officers and legislators are voted for in such elections; and that state officials whose duty it is to conduct such elections are for the time being acting for the United States as the paramount authority, and may be punished for violation of federal regulations relating to the conduct of such elections.

This, it appears to me, is a distinct proposition from that disposed of in the *Employers' Liability Cases,* in that it is based on constitutional provisions for the control of federal elections through the legislative authority of Congress, and is a matter of paramount importance to the satisfactory administration of the federal government both in the legislative and executive departments. The fact that the federal officials and legislators are voted for in the same elections with state officials

and legislators, is an incident which in no way conflicts with the paramount authority of Congress to regulate such elections.

" The day fixed for electing members of Congress has been established by Congress without regard to the time set for election of State officers in each State, and but for the fact that the State legislatures have, for their own accommodation, required State elections to be held at the same time, these elections would be held for congressmen alone at the time fixed by the act of Congress." *Ex parte Yarbrough,* supra, 661.

It is recognized in these cases that unlawful acts in such elections which can affect only the election of state officers and legislators, are beyond the jurisdiction of Congress. *Ex parte Siebold,* supra, 393. The cases cited in defendant's brief of *United States v. Cahill,* 9 Fed. Rep. 80, *United States v. Seaman,* 23 Id. 882, *Ex parte Perkins,* 29 Id. 900 and *United States v. Morrissey,* 32 Id. 147, all recognize this point and fully recognize, specifically or by implication, the law of *Ex parte Siebold* and *Ex parte Yarbrough,* supra, as to the jurisdiction of the United States in all cases where the unlawful act, being a violation of a federal statute, may affect the election of federal officers or legislators.

The case of *Ex parte Siebold* was brought under sections 2012, 2021, 5515 and 5522 of the Revised Statutes of the United States. The offense charged in the indictment was, briefly, that certain of the defendants stuffed the ballot boxes with ballots, it being a state regulation that the names of the federal officers to be voted for should be placed on the same ticket with those of the state officers to be voted for; also that certain of the defendants prevented a certain United States marshal and a certain supervisor of election, representing the United States, from examining the ballot boxes before the polling began. Siebold was convicted on a count of the indictment, which contained the charge of stuffing the ballot boxes. The case was brought up on application for a writ of *habeas corpus*

and the question of the constitutionality of the law was the main ground of the application.    The court denied the writ.

In the case of *Ex parte Yarbrough,* supra, Yarbrough and others were charged with conspiracy to intimidate a colored citizen of the United States and prevent him from exercising his right of voting in an election for a member of Congress. The fact that this was an election for state officers also, made no difference as to the constitutionality of the act under which the charge was brought, and the writ was denied.    The court said:

" Can it be doubted that Congress can by law protect the act of voting, the place where it is done, and the man who votes, from personal violence or intimidation and the election itself from corruption and fraud ?   If this be so, and it is not doubted, are such powers annulled because an election for State officers is held at the same time and place ?   Is it any less important that the election of members of Congress should be the free choice of all the electors because State officers are to be elected at the same time ?" (p. 661-662).

The law under which the present case is brought makes it unlawful for the corporations referred to in the second count to make a money contribution in connection with an election in which federal officers or legislators are voted for.    The mere fact that state officers and legislators are also to be voted for at such election does not, according to the precedents referred to, defeat the law or deprive the United States of the power to forbid such contributions where they may affect the election of its own officers and legislators.

" If for its own convenience a State sees fit to elect State and county officers at the same time and in conjunction with the election of representatives [to Congress], Congress will not be thereby deprived of the right to make regulations in reference to the latter." *Ex parte Siebold,* supra, 393.

The defendant in its brief makes the following additional point: "Can Congress legislate against contributions by state corporations ?"

The power of Congress to make regulations for the conduct of elections being paramount to all state authority affecting this subject, may reach state corporations in their relations to or conduct toward congressional elections as fully as it reaches the officers appointed by the State for the conduct of such elections, and this control, as has been shown above, is complete to the extent of punishing such officers for violations of federal regulations of these elections.

There is no showing made by the defendant which justifies the contention that the law on which this case is based is unconstitutional.

Under the foregoing considerations, the demurrer is allowed as to the first count of the information, on the ground that the defendant is not a "corporation organized by authority of any laws of Congress"; and is allowed as to the second count on the ground that an election within the Territory of Hawaii for a delegate to Congress is not within the statute under which these proceedings are brought.