UNITED STATES v. McCLARTY.

(District Court, W. D. Kentucky.  September 16, 1911.)

No. 7,609.

1. CONSPIRACY (§ 27*)—FEDERAL STATUTE—ELEMENTS OF OFFENSE—COMMISSION OF OVERT ACT.

To bring a case within Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), making it a crime to conspire to commit an offense against the United States where one or more of the parties "do any act to effect the object of the conspiracy," the conspirator must himself do the act or authorize it to be done, and a mere failure on his part to prevent another from doing it is not sufficient.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 38, 39; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, vol. 2, pp. 1454–1461; vol. 8, p. 7613.]

2. CONSPIRACY (§ 27*)—INDICTMENT—OVERT ACT.

An indictment charging the president of a national bank with conspiring with others to commit an offense against the United States by making a false entry in the books of the bank showing its balance in the hands of its reserve bank to be larger than it was in fact, with intent to deceive any agent who might thereafter be appointed by the Comptroller of the Currency to examine the affairs of the bank, does not state an of-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fense under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), where the overt act charged to have been committed by defendant consisted in his concealing from the bookkeeper, who actually made the alleged false entries, but who is not charged with being a party to the conspiracy, the issuance of certain drafts which should have been credited to the account of said reserve bank.

[Ed. Note.—For other cases, see Conspiracy, Dec. Dig. § 27.*]

Criminal proceeding by the United States by indictment against Clinton C. McClarty. On demurrer to indictment. Demurrer sustained.

See, also, 191 Fed. 523.

George Du Relle, U. S. Dist. Atty.

O'Doherty & Yonts, Kohn, Baird, Sloss & Kohn, and W. M. Smith, for defendant.

EVANS, District Judge. The indictment in this case contains three counts, each of which is based upon sections 5440 and 5209 of the Revised Statutes of the United States (U. S. Comp. St. 1901, pp. 3676, 3497), which sections embrace the applicable statutory provisions in force in 1908, when, it is alleged, the offenses charged were committed. The accused, then the president of the National Banking Association known as the First National Bank of Louisville, Ky., has demurred to each count in the indictment. Very shortly stated, it is charged in the first count:

First. That "the said McClarty feloniously did then and there conspire, combine, confederate, and agree with divers other persons to the grand jurors aforesaid unknown to commit an offense against the United States, to wit, feloniously did unlawfully conspire and agree with divers persons to the jurors aforesaid unknown to make a false entry in a book of said association with the intent then and there on the part of said McClarty and said others unknown to deceive any agent who might be thereafter appointed by the Comptroller of the Currency to examine the affairs of the said association; that is to say, that the said McClarty and said persons unknown then and there conspired and agreed, with the intent aforesaid, to make a false entry in a book of said association called and known as the 'Daily Balance Book,' and upon which book was then and there a label bearing the words following, to wit: 'Credit State Bank First Nat. Bank May 1, 1908—April 30, 1909'—and which book then and there was intended to and purported to show the assets and liabilities of said association and the amounts due to said association at the close of each day's business from other banking institutions, and the said McClarty and said others unknown did then and there conspire and agree to make said false entry in such manner as to indicate that the Fourth National Bank of New York, then and there a banking institution, a further description of which is to the jurors aforesaid unknown, was then and there indebted to said association to an amount which was then and there $231,100 greater than said Fourth National Bank was in fact indebted to said association."

Second. That, "in order to effect the object of said conspiracy, the said McClarty, president as aforesaid, with the intent aforesaid, then and there made a false entry in said book upon the page thereof which then and there contained entries showing the assets and resources of said association during the week beginning August 18, 1908, and ending August 24, 1908, and under the heading 'Reserve Banks' on the second line below said head and upon which said line at the left-hand end thereof then and there appeared the words following, to wit, 'New York Fourth National Bank,' and which said

false entry was then and there of the figures following, to wit: '292,380.27'—
and which said entry of said figures then and there purported to show, and
did then and there indicate, that a balance was then and there at the close
of business on the eighteenth day of August, A. D. 1908, due to said associa-
tion from said Fourth National Bank, to wit, a balance of $292.380.27, and said
entry was then and there false, in this: that the balance' then and there due
to said association from said Fourth National Bank was much less than the
amount shown and indicated by said entry, to wit, was only the sum of $61,-
280.27, as he the said McClarty then and there very well knew. And that
the said McClarty and said persons unknown then and there conspired and
agreed to make said false entry and said McClarty to effect the object of said
conspiracy then and there made said false entry by the following means and
in the following manner, to wit."

Then follow full details of certain transactions which resulted in
the making of divers drafts for large sums on the deposit of the First
National Bank in the Fourth National Bank of New York, which was
its reserve agent, and which drafts were drawn by C. C. Bickel, the
vice president of the First National Bank, by the authority of the
accused, the president. No mention of these transactions was made
by the accused to the general bookkeeper of the First National Bank,
who was Vivian A. Lloyd, and whose duty it was to keep the bank's
books in respect to such transactions.

Third. It is then charged that:

"The said McClarty and said persons unknown, with the intent then and
there to deceive any agent who might be thereafter appointed by the Comp-
troller of the Currency to examine the affairs of said association, did then
and there, to wit, on said 18th day of August, A. D. 1908, feloniously and unlaw-
fully conceal from said Lloyd, general bookkeeper and assistant cashier as
aforesaid, the fact of said depletion and diminution of said moneys- of said
association then and theretofore on deposit in and- with said Fourth National
Bank, so that said Vivian A. Lloyd, general bookkeeper and assistant cashier
as aforesaid, then and there made the said physical entry in said book, to
wit, said daily balance book showing, to wit, $292,380.27, as the amount due to
said association from said Fourth National Bank at the close of business on
said 18th day of August, A. D. 1908, instead of, to wit, $61,280.27, which, in
fact and in truth, was the proper entry then and there to be made. And
so the grand jurors aforesaid upon their oaths aforesaid present that the
said McClarty, president as aforesaid, feloniously did conspire, combine, con-
federate, and agree with divers other persons to the grand jurors aforesaid
unknown to commit an offense against the United States, to wit, to make a
false entry in a book of said association with the intent then and there on
the part of said McClarty and said persons unknown to deceive any agent
who might be thereafter appointed by the Comptroller of the Currency to
examine the affairs of said association, and that, in order to effect the object
of said conspiracy, the said McClarty made a false entry in a book of said
association with the intent and in manner and form as in this count afore-
said."

[1] It is essential in such cases that there should be, first, an agree-
ment between two or more persons to commit an offense against the
United States, the nature of which offense should be clearly and defi-
nitely stated in the indictment; and, second, one or more of the parties
to the conspiracy must be alleged to have done some specified act to ef-
fect the object of the conspiracy. Here a conspiracy is alleged and the
particular offense agreed to be committed is made clear enough, but
the difficulty which has arisen is about what is usually called the overt
act. The charge is that the conspiracy between the accused and other

persons unknown was to make a false entry on the books of the First National Bank, and then it is thrice stated that, in order to effect the objects of the conspiracy, the accused himself made the entry which the conspirators had agreed should be made. But it is also clearly averred that the physical act of making the entry was performed by Lloyd, the general bookkeeper, and not by the accused. The indictment specifically shows that Lloyd actually made the entry in a perfectly innocent manner. He is not charged to have been a conspirator, and it is in no way alleged that the entry was made by him under the direction or even with the knowledge of the accused. On the contrary, it is, in substance, averred that the accused concealed from Lloyd the fact of the diminution of the credit and balance of the First National Bank in the Fourth National Bank resulting from the payments of the drafts thereon signed by Bickel, the vice president, and for that reason the making of the entry is, by the pleader, imputed to the accused. While it is repeatedly charged that the accused made the entry "in order to effect the object of the conspiracy," it is nowhere charged that the accused "concealed" the facts respecting the drafts drawn by Bickel "in order to effect the object of the conspiracy." It is therefore entirely clear that the overt act relied upon by the government is that of making the entry. The language of the indictment admits of no other fair construction, and the question is, Does the indictment show that an "act" was done by the accused to effect the object of the alleged conspiracy within the meaning of section 5440? That section reads as follows:

"If two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court."

And it may be well at this point to note that section 5209, so far as applicable to this case, provides that "Every president * * * of any such association * * * who makes any false entry in any book * * * of the association * * * with intent * * * to deceive any * * * agent appointed to examine the affairs of any such association," shall be guilty of a public offense. Familiar rules require that these criminal statutes shall be construed, strictly. United States v. Wiltberger, 5 Wheat. 95, 5 L. Ed. 37; United States v. Harris, 177 U. S. 305, 310, 20 Sup. Ct. 609, 44 L. Ed. 780. Such statutes should not be so strictly construed as to defeat the legislative will, nor should doubtful words be extended beyond their natural meaning in order to create an offense by construction merely. In regard to the general subject, Chief Justice Marshall, in United States v. Wiltberger, 5 Wheat. 96, 5 L. Ed. 37, expressed the view of the court in this language:

"It would be dangerous, indeed, to carry the principle that a case which is within the reason or mischief of a statute is within its provisions, so far as to punish a crime not enumerated in the statute because it is of equal atrocity, or of a kindred character with those which are enumerated. If this prin-

ciple has ever been recognized in expounding criminal law, it has been in cases of considerable irritation, which it would be unsafe to consider as precedents forming a general rule in other cases."

This was reiterated in the Harris Case, 177 U. S. 310, 20 Sup. Ct. 609, 44 L. Ed. 780. And Mr. Justice Blatchford, speaking for the court in United States v. Brewer, 139 U. S. 278, 11 Sup. Ct. 538, 35 L. Ed. 190, said:

"Before a man can be punished, his case must be plainly and unmistakably within the statutes."

[2] With these general propositions in mind, we come to the consideration of the question whether the failure of the accused to inform Lloyd, the bookkeeper, of the facts respecting the drafts drawn by Bickel, made the act of Lloyd in putting the entries on the bank's books the "act" of the accused within the meaning of section 5440. We think this question must be answered in the negative, although, assuming the averments of the indictment to be true, the accused, the president of the bank, was most unfaithful to the manifest moral duty of giving full information and accurate directions to the bookkeeper respecting those transactions. The statutory provision is that if any one or more of the parties to a conspiracy "do any act to effect the object of the conspiracy all the parties to such conspiracy shall be liable," etc. Doing an "act," within the meaning of section 5440, must, we think, involve positive conduct upon the part of the doer and not mere passive inaction—that is to say, to bring a case within the statute, the conspirator must himself "do" the "act" or give authority to another to do that particular thing for him. A mere failure on the part of the conspirator to prevent another from doing the act of his own volition cannot be sufficient unless we disregard clearly established canons of statutory interpretation. Here, instead of "doing an act," there was an entire failure on the part of the accused to do the act he is charged with having done, the clear averment being made that another did that act, and the court is asked, by construction, to impute to the accused an act which was in fact done by another person upon the ground that the latter did the act because the accused concealed proper information from him. We think we cannot yield to this view without doing violence to settled principles of law, nor without putting new clauses into the statute, instead of construing what is already there. In our conception of the meaning of section 5440, the "act," to effect the objects of the conspiracy, must be actually done by a conspirator, or, if not actually done by him in person, it must be done by another by the actual and intentional procurement of the conspirator. Imputation to one person of the acts of another cannot in criminal cases find adequate basis in mere moral or argumentative considerations. Criminally a man can only be held responsible for what he actually does or actually procures to be done. In short, we think that the case stated in the first count of the indictment is not "plainly and unmistakably" within the statute, to use the language of the Supreme Court. If there has been a failure to provide

for the state of case developed by the record, Congress alone can supply the omission.

What we have said about the first count will equally apply to the other two.

The demurrer will be sustained to each count, and the indictment will be quashed and dismissed. A judgment accordingly will be entered.