Kelby, J.
The plaintiff, on July 30, 1919, after paying a fare of five cents, hoarded a West End train at Thirty-sixth street and Fourth avenue, in the borough of Brooklyn, and rode to Coney Island, where he was required to pay a second fare of five cents before leaving the terminal. This second fare was paid by the plaintiff under protest. The plaintiff claims that the legal fare over the route pursued by him was five cents, and not ten cents, and he sues to recover the overcharge of five cents and, in addition, the sum of fifty dollars, the penalty prescribed by section 59 of the Railroad Law for such overcharge. Upon the trial below, counsel for plaintiff stated that the action was brought under section 59 of the Railroad Law, which reads as follows: ' ‘ Any railroad corporation, which shall ask or receive more than the lawful rate of fare, unless such overcharge was made through inadvertence or mistake, not amounting to gross negligence, shall forfeit fifty dollars, to be recovered-with the excess so received by the party paying the same; but no action can be maintained therefor, unless commenced within one year after the cause of action accrued.”
The defendant in this action is Lindley M. Garrison, as receiver, and the point first presented is, does section 59 of the Railroad Law apply to receivers of corporations'? It is a penal statute, and, like all other penal statutes, must be strictly construed; and may not be extended to cases that are not clearly covered by its language.
In the case of United States v. Harris, 177 U. S. *197 305, an action was brought by the Federal government against the receiver of a railroad company to recover penalties for an alleged violation of the laws of the United States relating to the transportation of live stock. The act there reviewed prohibited a “ railroad company ” from confining animals in cars, boats or vessels of any description for a period longer than twenty consecutive hours without unloading the same for rest, water and food for a period of at least five consecutive hours. The act provided that any company which knowingly and willfully failed to comply with the provisions of the act should, for every such failure, be liable to a penalty of not less than $100 nor more than $500. The United States Supreme Court there held that, as the statute did not specifically relate to receivers of railroad companies, and as it was a penal statute, a receiver of a railroad company was not liable to the penalties therein prescribed. See, also, United States v. Nixon, 235 U. S. 231, and United States v. Weitzel, 246 id. 533. This action, therefore, under section 59 cannot be maintained against the receiver, and the court below properly found for the defendant.
Counsel for the plaintiff now asks us, in spite of his designation of the action as one to recover a penalty, to now regard the action as one to recover the alleged excess fare of five cents. If the action is so regarded, this appeal brings up for review the construction of a contract made by the city of New York, acting by the public service commission for the first district, and the New York Municipal Railway Corporation. This contract was entered into on the 19th of March, 1913, and contemplates in general terms one rapid transit system for the carriage of passengers, to be operated by the lessee for a single fare of five cents.
*198 In contract No. 4, article II, subdivision VIII and subdivision IX, the word “ railroad ” and the words “ existing railroads ” are defined at some length. In general terms, it may be said that, under this contract No. 4, the city leased to the New York Municipal Railway Corporation certain lines of rapid transit railroads constructed and to be constructed by the city, which the lessee, the New York Municipal Railway Corporation, agreed to operate in conjunction with certain other rapid transit lines belonging to the New York Consolidated Railroad Company, some of which were to be reconstructed, for a single fare of five cents. Prior to the making of this contract, there were four lines operated to Coney Island, namely, the Sea Beach line, the West End line, the Culver line, and the Brighton Beach line. The charges on these lines for a continuous ride between certain points in Brooklyn and Coney Island were ten cents. On March 25, 1913, the New York Municipal Railway Corporation assigned the operating provision of contract No. 4 to the New York Consolidated Railroad Company; and, on January 1, 1919, Bindley M. Garrison was duly appointed receiver of the last-named company.
As defined by the contract, the word “ railroad ” comprises lines to be built and owned by the city which are known respectively as the Broadway-Fourth Avenue line, the Culver line, and the Fourteenth Street-Eastern line. The words ‘ ‘ Existing Railroads ” mean: “ The railroads and the equipment thereof belonging to New York Consolidated Railroad Company and which the Lessee (defendant) has the right, and is under obligation to operate.”
The “ existing railroads ” consist of the Broadway line, the Fulton Street line, the Myrtle Avenue line, the Lexington Avenue line, the Fifth Avenue line, the *199 Brighton Beach line, the Canarsie line, and the Sea Beach line, “ together with all stations and real estate or interests therein "belonging to or used in conjunction therewith and all appurtenances thereto and all other property to he used thereon or in connection therewith, including the right of the Lessee to operate over the New York & Brooklyn Bridge and other track-age rights, * *
By article LIX, it was provided that: “ The Lessee shall operate the Railroad and the Existing Railroads as one complete system and shall furnish with respect thereto such service and facilities as shall he safe and adequate and in all respects just and reasonable.”
Article VII of the contract provides as follows: “As, in the opinion of the Commission, the public interest justifies the following provision, it is further provided:
“(a) That the construction of the portion of the Culver Line between Avenue X and Surf Avenue, or any particular part thereof, shall be suspended during the pleasure of the Commission, if the Lessee will provide and keep available for use, in lieu of such portion, a railroad owned or controlled by the Lessee or by New York Consolidated Railroad Company connecting the Culver Line with the Lessee’s Union Terminal immediately north of Surf Avenue in Coney Island, which, with the Railroad, less such portion as to which construction is so suspended, shall form a continuous and convenient route.
“(b) That the construction of the portion of Subdivision VIII of the Broadway-Fourth Avenue Line between a point near Avenue Y and Surf Avenue shall be suspended during the pleasure of the Commission, if the Lessee will provide and keep available for use, in lieu of such portion of Subdivision VIII, a railroad connecting said Subdivision VTII of the Broadway- *200 Fourth Avenue Line with the Lessee’s Union Terminal in Coney Island, which, with the Railroad, less such portion as to which the construction is so suspended, shall form a continuous and convenient route.”
Pursuant to subdivision “ b ” of article VII just above quoted, the New York Municipal Railway Corporation, on December 2, 1914, notified the public service commission of the first district that they proposed, with the approval of the commission, to provide and keep available for use, in lieu of the portion of subdivision VIII of the Broadway-Fourth Avenue line between a point near Avenue Y and Surf avenue, a railroad on the property of the Nassau Electric Railroad Company, under the terms and conditions set forth in an accompanying form of contract between the Nassau Electric Railroad Company and the New York Municipal Railway Corporation. The public service commission subsequently approved of the installation of this connecting link as proposed, and it was subsequently installed and has been in use.
Article LXII of the contract reads as follows: “ The Lessee shall during the term of this contract be entitled to charge for a single fare upon the Railroad and the Existing Railroads the sum of five (5) cents but not more; provided, however, that the provisions of this Article shall not prevent the Lessee from continuing to charge — until the time when trains may be operated for continuous trips wholly over connected portions of the Railroad (including both the Culver Line and Subdivision VIII of the-Broadway-Fourth Avenue Line) from the Municipal Building, in the Borough of Manhattan, to the points at or near Coney Island, at which the construction of the Railroad shall be suspended as provided in Article VII — the same fare for a continuous ride over the Existing Railroads and over the Railroad and the Existing Railroads as *201 that charged for a continuous ride over the Existing Railroads at the end of the fiscal year ending June 30, 1912.”
The public service commission did suspend construction of subdivision VIII of the Broadway-Fourth Avenue line at Avenue T, and the railroad has been connected at that point by a connecting railroad built and owned by the railroad company with the Sea Beach line, which is one of the “ existing railroads,” so that trains may be run over subdivision VIII of the Broadway-Fourth Avenue line onto the tracks of the Sea Beach line and into the company’s Union Terminal at Coney Island.
The Culver line has been completed and put in operation as far as Avenue X, but the public service commission did not suspend its construction at that point. Lately, the commission decided to suspend construction of the Culver line at Sheepshead Bay road, but the “ railroad ” has not, as yet, been completed to that point.
Under the facts here stated and provisions of the contract above quoted, the defendant has the right to charge the same fare for a ride over the “ existing railroads ” and over the railroad and the existing railroads ” as was charged for a similar ride over the “ existing railroads ” on June 30, 1912, until the construction of both the Culver line and subdivision VIII of the Broadway-Fourth Avenue line shall have been completed to the respective points where the commission shall actually suspend the construction of both lines. Subdivision VIII of the Broadway-Fourth Avenue line has been referred to in the evidence as the West End line.
Clearly, the “ connecting link ” above referred to is not part of the “ railroad ” as defined in the contract. It was built by the lessee to connect finished *202 construction of the railroad with the Union Terminal in Coney Island. Concededly also this connecting link was not in existence at the end of the fiscal year ending June 30,1912. This connecting link was furnished by the lessee to adapt its lines for operation in conjunction with the “ railroad,” and then over the Sea Beach line, which is undoubtedly part of the “ existing railroad.” Under article XIII the lessee undertook to reconstruct “ existing railroads ” so as to adapt them for operation in connection with the “ railroad,” and, therefore, for the purposes of the contract this connecting link can fairly be held to fall under the definition of “ existing railroads.” The fair intent of the contract is that the same rate of fare shall be charged for a ride over the “ railroad ” and the “ existing railroads ” as was charged in 1912 for a similar ride over the “ existing railroads.” A charge of ten cents was made on both lines for the same ride that this plaintiff took on the present West End line from Thirty-sixth street to Coney Island. In 1912, a passenger would board either a Sea Beach train or West End train at the Thirty-sixth street station and would have to pay a ten-eent fare on either line for a ride to Coney Island; and the same fare for a similar ride on the Brighton or Culver lines. Under these provisions, therefore, the defendant had the right to charge the plaintiff the ten-cent fare exacted.
But, if the terms of the contract were ambiguous, there has been a practical construction of the meaning of the contract by the public service commission, through which the city has acted in the execution of the contract, and the defendant’s predecessors. The public service commission has uniformly treated the “ connecting link ’■’ as part of the reconstruction of “ existing railroads,” and, consequently, as coming within the definition of “ existing railroads,” Fur *203 thermore, the “ existing railroads ” filed with the public service commission fare schedules showing a ten-cent charge for the ride taken by the plaintiff, and this has also been accepted by the public service commission.
Clark and Manning, JJ., concur.
Judgment affirmed, with twenty-five dollars costs.